**IN THE COURT OF APPEALS OF IOWA**

No. 25-0019
Filed March 19, 2025

**IN THE INTEREST OF M.D.,**
**Minor Child,**

**B.D., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Hardin County, Paul G. Crawford,

Judge.


        A father appeals the adjudicatory and dispositional orders in a

child-in-need-of-assistance proceeding.  **AFFIRMED.**


        Brian T. Bappe of Bappe Law Office, Nevada, for appellant father.

        Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

        Jennie L. Wilson Moore of Wilson Law Firm, Conrad, attorney and guardian

ad litem for minor child.


        Considered by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A father appeals the adjudicatory and dispositional orders in the child-in-need-of-assistance proceeding for his child, M.D., born in 2024. Upon our de novo review, we affirm.

### I.    *Background Facts and Proceedings.*

This family came to the attention of the Iowa Department of Health and Human Services ("the department") after allegations that the father was using methamphetamine and cocaine while caring for M.D.[1] Despite his substantial history of substance use, leading to multiple child-abuse investigations, the father refused to participate in any treatment and was dishonest with the department about his drug use.

From May to September 2024, the father completed several drug tests; his urinalysis and hair-stat tests were generally positive for marijuana while his sweat-patch tests were generally positive for methamphetamine, cocaine, and marijuana. The father had an Iowa medical cannabidiol registration card, which permitted him to consume medical cannabidiol in non-smoking methods.[2] *See* Iowa Code §§ 124E.4, .17 (2024). As long as the father was not using while caring for children, the department stated his marijuana consumption was "not a priority" and focused its attention on the methamphetamine and cocaine usage. But the

---

[1] In May 2022, a case opened in Grundy County, Iowa, which concerned the father's child with a different mother. In summer 2024, M.D.'s case was opened in Hardin County, Iowa. But the State introduced evidence, including drug-testing, from the Grundy County case as part of M.D.'s adjudication.

[2] We do note, however, that the father testified that he had "a connector that I use to smoke [marijuana] from." But because the department's main concerns were active methamphetamine and cocaine use, we similarly focus our analysis there.

father failed to address the department's substance-use concerns.  He challenged the reliability of sweat-patch testing and claimed his prescription medication caused a "false positive," although he later testified that he had discontinued use of the medication during the disputed testing periods.

At the adjudicatory hearing, which was held over the course of two days in September and October 2024, the department's child protective worker testified to its testing policies, in which it preferred sweat patches because they "are the least able to be tampered with" by parents.  The department used hair-stat testing on a three-month cycle because it is used to measure previous, longer-term exposure rather than active drug use.  The child protective worker also explained that urinalysis was not preferred because the testing facilities could not always accommodate proper procedures due to staffing issues.  The State also retained an expert toxicologist, Dr. Leo Kadehjian, who testified without objection from any party.  Dr. Kadehjian confirmed the validity of the father's results using chain-of-custody analysis and testified that the mixed results across multiple methods were consistent with lower-dosage, recreational use.  He similarly discounted the father's claim that his prescription medication could have caused a "false positive," testifying that "Seroquel could in no way lead to a positive . . . result."  Dr. Kadehjian also agreed with the department that sweat-patch testing was the best method because it struck a balance between convenience to the tester with reliability of discerning active use.

The juvenile court adjudicated M.D. as a child in need of assistance.  The father appeals.

## II.     Review.

We review child-in-need-of-assistance proceedings de novo.  *In re A.G.*, No. 24-1507, 2024 WL 4966120, at 2 (Iowa Ct. App. Dec. 4, 2024) (citation omitted).  While not binding on us, "[w]e give weight to the juvenile court's fact-findings," especially those regarding the credibility of witnesses.  *Id.* (citation omitted),  "As in all juvenile proceedings, our fundamental concern is the best interests of the child."  *Id.* (citation omitted).

## III.     Discussion.

The father challenges the adjudication and dispositional orders.  M.D. was adjudicated as a child in need of assistance based on her parents' inability to care for her due to their substance use.  *See* Iowa Code § 232.96A(3)(b), (14) (permitting adjudication when a parent fails "to exercise a reasonable degree of care in supervising the child" and their substance use prevents the child from receiving adequate care).  But we do not have "to wait for a drug-related harm to befall" a child before adjudication is warranted.  *In re D.A.*, No. 24-0094, 2024 WL 3290377, at *5 (Iowa Ct. App. July 3, 2024).  "When a parent is actively using methamphetamine, we may conclude a child is imminently likely to suffer harmful effects due to the parent's inability to exercise a reasonable degree of care in supervising the child."  *See In re P.H.*, No. 20-0372, 2020 WL 5650628, at *3 (Iowa Ct. App. Sept. 23, 2020).  Therefore, if we find that the State proved by clear and convincing evidence that the father was actively using, we will affirm the adjudication to protect the child.  *See id.* (interpreting adjudicatory statutes "liberally" because they "are designed to prevent probable harm to the child and

do not require delay until after harm has occurred" (citation omitted)); *see also* Iowa Code § 232.96(2) (placing the burden on the State).

The father's only argument is to contest the validity of his sweat-patch test results. We have previously found that sweat-patch testing is "a generally reliable method for determining drug use." *In re M.S.*, No. 23-0036, 2023 WL 2674100, at *3 (Iowa Ct. App. Mar. 29, 2023) (citation omitted). But the State went even further, presenting clear and convincing evidence that the father was actively using methamphetamine and cocaine. Both the department's child protective worker and Dr. Kadehjian testified that the father's tests were accurate, and Dr. Kadehjian concluded as an expert that the results indicated active drug use. This was also corroborated by the father's history with the department, his failure to participate in services, and the department's own testimonies. *See P.H.*, 2020 WL 5650628, at *4 (considering the parents' history of substance use, failure to cooperate with department services, and dishonesty with providers when affirming adjudication); *D.A.*, 2024 WL 3290377, at *4 ("The failure of a parent to cooperate with the department and failure to utilize offered services may also be considered."); *In re L.H.*, No. 19-0931, 2019 WL 5063336, at *5 (Iowa Ct. App. Oct. 9, 2019) ("The parents' failure to comply with drug . . . testing is a failure to address each parent's role in events causing adjudication."). For example, immediately following one of the adjudicatory hearings, the child protective worker observed the father at a nearby convenience store and later testified that "[h]is eyes were dilated" and his movements were "overexaggerated." Based on her training and experience with the department, she testified that he "appeared to be under the influence of some sort of substance." We find that there is clear and convincing evidence that the

father is engaging in active substance use, and this finding warrants adjudication to prevent harm to M.D. *See P.H.*, 2020 WL 5650628, at *3. Accordingly, we affirm.

### IV. Disposition.

Because there is clear and convincing evidence to adjudicate M.D. as a child in need of assistance, we affirm.

**AFFIRMED.**